Oldham, J. This was a bill filed in the Circuit Court of Pulaski county, on the chancery side thereof, by Baldwin as a judgment creditor of John W. Johnston, against said John W. and Margaret his wife, and George W. Johnston, to subject certain slaves to the payment of the judgment. The material facts established by the bill, answer, exhibits, and proof, are that on the 10th day of May, 1842, Baldwin recovered in the Pulaski Circuit Court against John W. Johnston, judgment for three hundred dollars debt, forty-eight dollars and seventy-five cents damages, and also his costs, for which execution issued, and was returned no property found. That on the 29th day of January, 1841, said Johnston executed a deed of trust to Thomas W. Newton, as Cashier of the Real Estate Bank of the State of Arkansas, and his successors in office, conveying certain tracts of land, and seven slaves therein named, to. indemnify Albert Pike and Thomas Thorn, who were about to become bis security on a note to said Bank for the sum of $6582, to be dated on the 6th day of February, A. D. 1841, and to become due twelve months after daté. The trust deed was duly acknowledged, was filed for record on the 12th day of November, 1841, and recorded. On the 28th July, 1841, Johnston executed a declaration of. trust by which it was declared that said Newton and his successors held the land and negroes conveyed by said deed, not only for the liabilities specified in the deed, but also for the payment of thirty-five hundred dollars received by said Johnston on the account and credit of James B. Keatts, as a stockholder of the Real Estate Bank. On the 26th day of April, 1843, Newton, as such trustee, sold the land and slaves to Albert Pike, for the sum of $3000, at public sale, according to the direction of the deed. On the same day Pike executed and delivered to Johnston a writing under seal by which he promised and agreed that if he should purchase the property to be sold by Newton, under the deed of trust on that day, he would convey the same to Johnston if he would, within two years, pay the debt for which Pike was his security in the Real Estate Bank, and all the costs and charges to which he might be exposed on account of said debt or sale, and all moneys which he might have to pay on account thereof, in the same kind of funds with interest. On the 29th day of May, 1843, five of said slaves having been previously levied upon by the sheriff of Pulaski county, by virtue of sundry writs of execution against John W. Johnston and others, and advertised for sale, on that day were sold and purchased by George W. Johnston, or other persons whose bids he assumed. At the sale Pike was present, and gave notice that he held the slaves under his purchase at the trustees’ sale, and that he would assert and maintain his title. The proceeds of the' sale were, by order of the Circuit Court, applied to a judgment of Chester Ashley, against .John W. Johnston, recovered on the 23d day of June, 1841, for $1600, upon which an execution was issued on the 10th day of February, 1842, which was levied upon the slaves and returned without sale, and a venditioni exponas was afterwards issued. On the 6th day of June, 1843, John W. Johnston sold his interest in a contract for carrying the United States mail, to Thomas Thorn, for which Thorn assumed the debts and liabilities for which the deed of trust and declaration of trust were executed to Newton, and Johnston, Pike and Keatls were completely discharged and released therefrom. On the 7th day of June, 1843, Pike conveyed the negroes purchased by him at the trustees’ sale to George W. Johnston, in trust for the use and benefit of Margaret Johnston, wife of said John W., during her life-time, and after her death to go to her heirs. No consideration appears to have been paid save the assumption of the debts of Thorn for which the deed of trust had been executed. At the November term, 1843, one of the negroes, not being sold at -the previous term of the court, was sold under execution by the sheriff, and purchased by William Field, for $500. George W. Johnston immediately obtained possession of the negro by a wilt of replevin. The suit was afterwards determined against him upon a technicality, and Field took judgment against him for the value of the negro. The bill upon these facts seeks to subject the negroes to the payment of the complainant’s judgment against John W. Johnston. The defendant George W. Johnston, in his answer insists, that by virtue of the act of the General Assembly, approved Dec. the 28th, 1840, the judgment recovered by Ashley became a lien upon the slaves from the rendition of the judgment, and that Ashley was thereby invested with a legal right to complete the execution of his judgment by having the slaves sold for the satisfaction of his demand. In other words, that the judgment, having been rendered before the deed of trust to Newton was filed for record, had priority over the latter and that the sheriff’s title is paramount to the trustee’s. This court, in Gullett et al. v. Lamberton, 1 Eng. Rep. 109, held that “by the act of the Legislature of 1840, slaves are declared to be real estate and are thereafter to descend and bo holden as such. By this act they descend to the heir and not to the administrator and are to be conveyed and held by the same title as real estate. It was beyond the power of the Legislature to change their nature, which was never designed to be done, but it was only designed to change their mode of descent and the title by which they should be held.” The Legislature, at the time it was enacted that “judgments and decrees rendered in the Circuit Court shall be a lien on the real estate of the person against whom they are rendered, situate in the county for which the court is held, commencing on the day of the rendition of the judgment,” Rev. Stat., ch. 84, sec. 2, 3, only intended such liens to apply to lands, for lands and real estate were then convertible terms. Slaves were then held to be personal property. It was obviously not intended, by declaring them to be real estate for the purposes of descent and the nature of the title by which they should be held, to give them all the legal attributes of realty, and to subject them to all the laws governing and applicable to real estate. After the passage of the act of 1840, they remained personalty for all purposes, except those specified in the act, and were governed by the laws applicable to such property. Judgments therefore did not become a lien upon them from the day of the rendition of the judgment, as upon lands, but they became charged with the lien, as other personal estate, from the time the execution came to the officer’s hands. The deed of trust became a lien upon the property conveyed from the time the same was filed in the recorder’s office for record: Rev. Stat., ch. 102, sec. 2: which was on the 12th day of November, 1841. No lien attached in favor of the judgment creditor, until the execution came into the hands of the sheriff, which is not shown. The execution however did not issue until the 10th day of February, 1842, nor until after the mortgage lien, or lien under the deed of trust, had attached. Therefore, if the stipulations of the deed were not complied with on the part of Johnston, and the negroes were regularly sold according to the directions of the deed, by Newton, in the execution of the trust, the title acquired by Pike by virtue of his purchase was valid, and was not affected by the sale under execution by the sheriff. The regularity of the trust sale is not questioned by either of the parties, consequently, the negroes were not subject to sale under execution as the property of John W. Johnston, unless the agreement executed and delivered by Pike to him rendered them liable as such. That agreement gave Johnston the privilege of redeeming the ne-groes within two years, by paying the debt, &c., for which Pike was liable for him. It did not affect the legal title to the slaves which still remained in Pike, and consequently they were not liable to seizure and sale under execution as the property of Johnston. The sale made by the sheriff to George W. Johnston conferred no title whatever to him, but the legal title remained in Pike until John W. Johnston, by the sale of his interest in the mail. contract, discharged the debts and liabilities for which he had executed the deed of trust to Newton. Pike then made a conveyance to George W. Johnston of the negroes, in trust for the use of Margaret, wife of John W., for life, with remainder to her heirs. No consideration passed for the conveyance except the payment of the liabilities specified in the deed of trust to Newton by the means already stated. John W. Johnston having paid the consideration upon which Pike conveyed the negroes to George W., and being hopelessly insolvent, equity will pursue the property and subject it to the payment of his debts. This is one of the clear and obvious principles of chancery jurisdiction. Upon the payment of the debts due the Bank, Pike became the trustee for John W. Johnston, the property became subject to the payment of the debts of the latter, and the conveyance to George W. Johnston, upon the trusts expressed in the deed, and without other or further consideration, was a fraud upon the creditors of John W. Johnston. One of the negroes having already been sold under execution cannot again be sold unless it be made to appear that the sale was not regularly and fairly made. He was purchased by Field for five hundred dollars and the money applied to the satisfaction of the execution. The object of this bill -has been effected in regard to that slave, and the court will not decree that he be again sold for the same purpose for which he has been already sold. The decree of the Circuit Court in chancery in dismissing the complainants’ bill, is erroneous and must be reversed. The cause is remanded with directions to render a decree in accordance with this opinion.